UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CR-395-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| DURWOOD JOSEPH FIELDS, | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the court on the motion (D.E. 31) by defendant, Durwood Joseph Fields, to suppress statements he made during a custodial interrogation on 1 July 2008 on the grounds that his heroin addiction rendered ineffective his express waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). In support of his motion, defendant filed two initial memoranda. (D.E. 32, 37). The government filed a response (D.E. 39) in opposition. The motion was referred to the undersigned for issuance of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On 16 July 2009, the undersigned held a hearing on the motion. With the court's approval, supplemental memoranda were filed on 24 July 2009 by both the government (D.E. 50) and defendant (D.E. 51).[1] For the reasons stated below, it will be recommended that defendant's motion be denied.

## PROCEDURAL BACKGROUND

On 30 December 2008, an indictment (D.E. 1) was issued against defendant charging him with possession of one or more firearms by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. On 15 June 2009, defendant filed his motion to suppress.

---

[1] References herein to defendant's supplemental memorandum are to this post-hearing memorandum, not the second pre-hearing memorandum defendant filed (D.E. 37), which he also titled "supplemental."

At the hearing on the suppression motion, the government presented the testimony of Special Agent John Corpening of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and Lieutenant Timothy Tomczak of the Raleigh Police Department. (Transcript of Hearing ("Hrg. Tr.") (D.E. 49) 7:2-5; 39:5-10). Lieutenant Tomczak was offered and qualified by the court as a drug recognition expert, someone who is trained to determine whether a person is impaired and the cause of the impairment. (*Id.* 42:6-12; 45:23-25 to 46:1-7). If such impairment is due to drugs, a drug recognition expert is trained to determine the general type of drug causing the impairment. (*Id.* 42:9-12). The court admitted the six exhibits offered by the government without objection by defendant: the declaration of Corporal Dave Cloutier of the Goldsboro Police Department (Gov.'s Hrg. Ex. A (D.E. 39-2)); the declaration of Agent Corpening (Gov.'s Hrg. Ex. B (D.E. 39-3)); the video recording of the interview of defendant ("Video") (Gov.'s Hrg. Ex. C (D.E. 39-4)); the report on the interview completed by Agent Corpening (Gov.'s Hrg. Ex. D (D.E. 39-5)); the *Miranda* warning/waiver form ("*Miranda* Form") executed by defendant at the interview (Gov.'s Hrg. Ex. E (D.E. 39-6)); and the curriculum vitae ("CV") of Lieutenant Tomczak (Gov't Hrg. Ex. F.). (*See* Hrg. Tr. 39:11-15; 102:18-25 to 103:1-13; 201:15-25; *see also* Am. Ex. List (D.E. 46-2)). The government also offered, solely for purposes of impeachment, a purported declaration by defendant (D.E. 37-2) which he had filed with his second memorandum.[2] (*See* Hrg. Tr. 193:4-24).

---

[2] The purported declaration does not contain the certification or substantial equivalent necessary to give it the effect of an affidavit—namely, a certification under the penalty of perjury that the information in the document is true and correct. *See* 28 U.S.C. § 1746; *U.S. v. 8 Gilcrease Lane*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008) ("[T]here are two statements that are essential to a proper verification under § 1746: (i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of perjury."). Defendant cites to his purported declaration in two of his memoranda (D.E. 37 at 2; D.E. 51 at 1). Because the purported declaration lacks the requisite certification, among other reasons, the court has not treated it as substantive evidence in support of defendant's case. *Network Computing Servs. Corp. v. Cisco Sys.*, 152 Fed. Appx. 317, 321 (4th Cir. 2005) (statement that did not comply with 28 U.S.C. § 1746 was not admissible evidence to be considered in opposition to summary judgment motion); *Sterling Fifth Assocs. v. Carpentile Corp., Inc.*, No. 03-Civ-6569(HB), 2003 WL 22227960, at *5 (S.D.N.Y. 26 Sept.

Defendant presented the testimony of his sister, Joyce Pittman, and clinical psychologist Chris Boyle, M.A. Boyle was offered and qualified by the court as an expert in clinical psychology with an ability to recognize substance abuse and its physical manifestations. (*Id.* 134:20-25; 145:1-15). Defendant also introduced one exhibit without objection: Boyle's CV (Def.'s Hrg. Ex. 1). (*See* Hrg. Tr. 131:8-21; Am. Ex. List).[3]

## FINDINGS OF FACT

After careful consideration of all the evidence of record on defendant's motion, including review of the video recording of defendant's interview and the transcript of the recording ("Interrog. Tr." (D.E. 55)),[4] the court makes the following findings of fact:

On 30 June 2008, defendant purchased approximately 50 bindles[5] of heroin. (Interrog. Tr. 10:9-25; Interrog. Rep. ¶ 2). The next day, 1 July 2008, defendant sold a bindle of heroin to an informant in a controlled buy at a residence in Goldsboro. (Cloutier Dec. ¶ 2). The residence belonged to defendant's mother, and defendant occasionally stayed there. (*Id.* ¶ 2; Interrog. Tr.

---

2003) (court noted difficulty in relying on declaration which did not comply with the requirements of 28 U.S.C. § 1746).

[3] When determining preliminary questions concerning the admissibility of evidence, as on a motion to suppress, a district court is not bound by the Federal Rules of Evidence, except those with respect to privilege. *See* Fed. R. Evid. 104(a); *see also United States v. Matlock*, 415 U.S. 164, 172 (1974) (holding that "the rules of evidence normally applicable in criminal trials do not operate with full force at [suppression] hearings before the judge to determine the admissibility of evidence"); Fed. R. Evid. 1101(d)(1). Nevertheless, the court has relied on the Federal Rules of Evidence and the principles underlying them in evaluating the evidence presented on defendant's motion.

[4] Due to the unduly cumbersome nature of the software necessary to play the Video and in order to facilitate citation to specific statements made by the participants in the interview, the court ordered that the audio portion of the Video be transcribed and filed. The court will rely primarily on citation to the transcript in referring to the interview. The court will cite specific portions of the Video principally in referring to non-verbal evidence, which is not provided in the transcript of the Video. Such citations will be to the time stamp in the Video, which is in 24-hour format, *e.g.*, "13:01:01." Citation to the Video generally will be in the form "Video."

[5] A "bindle" is 0.1 grams of heroin. (Hrg. Tr. 79:1-6). A "bundle" contains 10 bindles, or 1.0 grams of heroin. (Hrg. Tr. 79:7-8). A "brick" contains 5 bundles, or 5.0 grams of heroin. (Hrg. Tr. 79:9).

3

21:20-22:3; Hrg. Tr. 108:14-16; 115:6-16). Later that day, Corporal Cloutier obtained a warrant to search the residence. (Cloutier Dec. ¶ 3; Hrg. Tr. 7:10-17). The search warrant was executed at approximately 3:15 p.m. (Hrg. Tr. 9:1-7). During the search, several guns were discovered in two safes and elsewhere in the house. (Cloutier Dec. ¶ 3; Hrg. Tr. 7:10-17). Law enforcement officers also found approximately 50 empty bindle bags containing heroin residue on the bed in the front center bedroom. (Cloutier Dec. ¶ 3; Hrg. Tr. 27:2-4).

While the search warrant was being executed, defendant, who had been placed in handcuffs, sat on the front porch of his house with family members. (Hrg. Tr. 9:14-10:4; 108:23-109:4). Defendant's sister, Joyce Pittman, arrived at the premises approximately 30 minutes after the police arrived. (*Id.* 121:8-20). At that time, defendant would nod out, dropping his chin to his chest and closing his eyes. (*Id.* 109:5-13; 122:8-19). However, defendant did understand what was said to him and spoke coherently. (*Id.* 123:24-124:4). Defendant also told his sister that he was going to be sick very soon due to heroin withdrawal and told her to hurry and get him out of jail. (*Id.* 110:18-25; 123:12-23).

After the search of the house, defendant was taken to the Goldsboro Police Department, where Corporal Cloutier and Agent Corpening conducted an interview of defendant. (Interrog. Rep. 1; Hrg. Tr. 12:17-24; 14:16-20). The interview began at about 7:00 p.m. and concluded at about 9:35 p.m. (Video 18:59:07 to 21:35:59; Hrg. Tr. 12:17-24; Interrog. Rep. 1). There were two breaks during this 2½ hour period, which lasted approximately 37 and 48 minutes, respectively. (Video 19:34:31 to 20:11:05; 20:40:34 to 21:28:20). During these breaks, the officers left defendant alone in the interview room. (*Id.*). During the second break, defendant formed a make-shift cot out of three chairs and laid down. (Video 20:59:40).

4

When the officers entered the interview room, defendant was seated at a table with his head and arms down on the surface of the table. (*Id.* 18:59:50; Hrg. Tr. 15:8-12; 28:20-24). He did not move from this position when the door opened, but he did raise his head when Corporal Cloutier spoke to him. (Video 18:59:50). Defendant remained sitting up at all times when he was speaking to the officers. (Video; Hrg. Tr. 15:22-25; 16:7-13; Cloutier Dec. ¶ 29).

Before beginning the interview, Corporal Cloutier read defendant each of his *Miranda* rights separately from the *Miranda* Form. (Interrog. Tr. 2:19-4:2; Cloutier Dec. ¶¶ 18, 20). After reading each right, Corporal Cloutier asked defendant if he understood that right and had him indicate his understanding by writing "yes" and his initials on the space provided next to each right on the *Miranda* Form. (Interrog. Tr. 3:3-23; Hrg. Tr. 17:10-18:2; Cloutier Dec. ¶¶ 19-23; *Miranda* Form). At Corporal Cloutier's direction, defendant then read aloud a statement on the *Miranda* Form which indicated that he had read and understood each of his rights, that he wished to speak with the officers without an attorney present, and that he had not been pressured to do so. (Interrog. Tr. 5:21-6:2; Hrg. Tr. 20:14-15; Cloutier Dec. ¶ 26; *Miranda* Form). Defendant then signed the form in the space provided at the bottom, using his full signature, acknowledging what he had just read. (Interrog. Tr. 6:3-5; *Miranda* Form).

During the interview, defendant stated that he had used 35 or so bindles of heroin from the batch of 50 that he purchased the night before. (Interrog. Tr. 11:3-17; Hrg. Tr. 26:20-27:5; 30:12-18; 31:2-5). He also told the officers that he regularly consumed over three bundles of heroin each day. (Interrog. Tr. 7:2-7; 33:22-25; Hrg. Tr. 31:6-11). Additionally, defendant and the officers discussed how and with whom he bought and sold heroin, how he might be able to assist the officers in their investigation of other suspects, and how such assistance might benefit him. (Interrog. Tr. 7:8-14;

5

7:20-9:16; 10:3-11:2; 11:25-12:5; 13:6-18:24; 36:19-39:16; 42:15-47:14; 50:4-52:12; 62:4-65:3). The officers also questioned defendant about the evidence found during the search. (*Id.* 52:18-54:20; 55:3-56:19; 67:5-69:6). While defendant, who was shirtless, complained of being cold, he never complained to the officers of being under the influence of heroin or of being sick. (*Id.* 65:11-19; Hrg. Tr. 27:6-9; 32:4-16).

Defendant has remained incarcerated since his arrest and interview. Sometime within the day following the interview, defendant began experiencing vomiting, chills, and shaking. (Hrg. Tr. 124:8-129:6). When he spoke to his sister during this time, he told her that he was experiencing these physical symptoms due to withdrawal from heroin. (*Id.* 127:12-17).

## DISCUSSION

### I. TEST FOR VALIDITY OF A *MIRANDA* WAIVER

The Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. To protect this right, the Supreme Court in *Miranda* established rules governing custodial interrogations. 384 U.S. at 479. *Miranda* requires that, prior to questioning, a suspect who is in custody must be informed "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* Questioning may proceed only if the person lawfully waives his rights. *Id.* *Miranda* conditions the admissibility at trial of any custodial statements on compliance with the warning procedure. *Id.* "'[F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of

6

any statements obtained.'" *United States v. Mashburn*, 406 F.3d 303, 306 (4th Cir. 2005) (quoting *Missouri v. Seibert*, 542 U.S. 600, 608 (2004)).

The inquiry into the validity of a waiver has two distinct elements. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The court must determine, first, whether it was voluntary and, second, whether it was knowing and intelligent. *Id.* This determination is to be made based on the "'totality of the circumstances surrounding the interrogation.'" *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). The government has the burden of proving the existence of both elements by a preponderance of the evidence, *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005), and "that burden is a heavy one, requiring convincing evidence," *United States v. Grant*, 549 F.2d 942, 946 (4th Cir. 1977), *vacated on other grounds sub nom. Whitehead v. United States*, 435 U.S. 912 (1978).

In his motion as filed, defendant challenged the validity of his *Miranda* waiver as both involuntary and not knowing and intelligent. The court will therefore turn to a closer look at the law and evidence relating to each of these elements.

## II. VOLUNTARINESS ELEMENT OF WAIVER

In *Moran*, the Supreme Court held that the voluntariness prong requires that the waiver be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. In determining whether a defendant's will has been overborne, the court must take into consideration his characteristics. *United States v. Cristobal*, 293 F.3d 134, 141 (4th Cir. 2002). These include a defendant's alleged deficient mental condition resulting from drug addiction because it is relevant to his susceptibility to police coercion. *Id.* But mental condition alone cannot render a waiver involuntary. *Id.* Rather, the focus of the voluntariness prong is on police conduct. *Id.*

7

Indeed, "coercive police activity is . . . a necessary predicate to a finding that a waiver of *Miranda* rights is not voluntary." *Id.* (citing *Connelly*, 479 U.S. 157, 169-70 (1986)). The reason is that the Fifth Amendment, on which *Miranda* was based, is concerned solely with governmental coercion, and not moral and psychological pressures to confess from other sources. *Connelly*, 479 U.S. at 170.

Although, as indicated, defendant initially challenged his waiver as involuntary, in his supplemental memorandum he states that he "does not contest the 'voluntary' prong of the *Moran* test, which refers to whether a defendant's will has been overborne in a case of police coercion." (Def.'s Supp. Mem. 4). At the hearing, defendant declined to present any argument on the voluntariness of the waiver. (Hrg. Tr. 185:3-8). Defendant has thus abandoned his challenge to his waiver based on voluntariness.

His doing so is understandable. The record shows that the police engaged in no coercive activity in connection with their interview of defendant. They spoke to him in a respectful manner, did not abuse him physically, and showed concerns for his comfort (*e.g.*, agreeing to find him something to wear when he expressed that he was cold (Interrog. Tr. 65:7-15) and offering him something to drink (*Id.* 36:15-20)). As in *Moran*, "the record is devoid of any suggestion that police resorted to physical or psychological pressure to elicits the statements" they obtained from defendant. *Moran*, 475 U.S. at 421. The court accordingly finds that defendant's waiver of his *Miranda* rights was voluntary.

### III. KNOWING AND INTELLIGENT ELEMENT OF WAIVER

#### A. Definition of Element

The issue now becomes whether defendant's remaining challenge to his *Miranda* waiver—that it was not knowing and intelligent—is meritorious. To be knowing and intelligent, a

waiver of *Miranda* rights must have been made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *Cristobal*, 293 F.3d at 140. But "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987) (citing *Moran*, 475 U.S. at 422). It is sufficient if he "knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Id.*, 479 U.S. at 574; *see also Moran*, 475 U.S. at 422-23.

The Fourth Circuit has "recognize[d] that there are situations where, after receiving certain painkillers and other narcotics, a person might be incapable of making a reasoned decision to abandon his or her rights." *Cristobal*, 293 F.3d at 142. But the mere fact that a defendant has consumed drugs or alcohol does not render him incapable of making a knowing and intelligent waiver, as demonstrated by the numerous cases upholding waivers by those who have consumed these substances. *See, e.g., id.*, 293 F.3d at 142-43 (affirming finding that the defendant made a knowing and intelligent waiver of his *Miranda* rights in the absence of evidence that the pain killers and narcotics he had been given adversely affected his ability to make such a waiver); *United States v. Smith*, 608 F.2d 1011, 1012-13 (4th Cir. 1979) (affirming finding that although the defendant "appeared to be drinking he was sober enough to know where he was and to recognize who the people around him were," concluding that the statement was "freely, voluntarily and understandingly made"); *United States v. Sledge*, 546 F.2d 1120, 1122 (4th Cir. 1977) (holding the trial court properly admitted a statement when "the defendant was aware of what was occurring when interrogated and voluntarily, intelligently, and knowingly signed the waiver form," even though it was undisputed that the defendant had consumed narcotics on the day of the interrogation). Instead,

9

"a test 'of coherence, of an understanding of what is happening' [applies] in determining the validity of waiver, where defendants claim mental impairment due to alcohol or drugs." *Moore v. Ballone*, 658 F.2d 218, 229 (4th Cir. 1981) (quoting *Smith*, 608 F.2d at 1012). This standard therefore focuses on such basic concerns as whether the defendant was alert and capable of rational thought at the time of interrogation. *See Cristobal*, 293 F.3d at 142.

The decisions in this area concentrate on indicia of the defendant's mental capacity that were observable at the time of the interrogation. Such evidence includes the defendant's ability during the interrogation: to have a conversation, *see Smith*, 608 F.2d at 1012; to speak logically with fluid speech that is not slurred, *see United States v. Edmonds*, No. 5:08-CR-368-1-F, 2009 WL 1416034 at *3 (E.D.N.C. 2009); to remember historical facts, *see Edmonds*, 2009 WL 1416034 at *3; to provide detailed information, *see Cristobal*, 293 F.3d at 143; to recognize the people around him, *see Smith*, 608 F.2d at 1012-13; and to remain alert and awake while being interrogated, *see United States v. Sledge*, 546 F.2d 1120, 1122 (4th Cir. 1977). In addition, courts may consider medical testimony on the effect of drugs in evaluating a defendant's capacity. *See Cristobal*, 293 F.3d at 142. Here, psychological testimony on the effects of heroin use on the capacity to make a knowing and intelligent waiver is also before the court.

### B. Evaluation of Defendant's Capacity to Knowingly and Intelligently Waive

The court now turns to evaluation, pursuant to the foregoing standard, of the evidence bearing on defendant's capacity to knowingly and intelligently waive. It notes that, while it has considered all the evidence, it has relied most heavily on its own review of the video tape of defendant's interview and the transcript of the tape to determine what happened during the interview. Additionally, the court has given greater weight to the testimony of Agent Corpening than to the

10

declaration of Corporal Cloutier because Corporal Cloutier was not subject to cross examination. For similar reasons, the court has relied on the hearing testimony of Agent Corpening rather than his declaration. The court's evaluation establishes that defendant clearly had the coherence and ability to understand needed to make a knowing and intelligent waiver of his *Miranda* rights.

### 1. *Evaluation of Non-Expert Evidence*

For example, the Video shows that defendant was alert and lucid during the questioning. Both Agent Corpening's testimony and Corporal Cloutier's declaration confirm that fact. (Hrg. Tr. 15:22-25; 16:7-13; 23:6-16; Cloutier Dec. ¶¶ 29-34).

The evidence also shows that defendant responded to the officers in a timely and appropriate manner. For instance, after being directed to do so, defendant rolled his arms over so that Corporal Cloutier could remove defendant's handcuffs. (Video 18:59:56; Hrg. Tr. 15:13-16). But defendant's responsiveness is demonstrated perhaps most dramatically by his compliance with the relatively elaborate instructions he was given for completion of the *Miranda* form. As directed, he verbally acknowledged that he understood each of his *Miranda* rights as they were read to him, initialed each line on the *Miranda* form indicating that he read and understood each right, and read the rights form aloud. (Interrog. Tr. 3:3-6:5; 5:21-6:2; Hrg. Tr. 17:10-25; 20:1-15; 34:17-35:5; 36:25-37:8; Cloutier Dec. ¶¶ 18-28).

It is true, as defendant emphasizes, that he did exhibit signs of fatigue during his interview. But this apparent tiredness did not interfere with his ability to interact with the officers. For example, defendant was seated with his head down on the table when the officers first entered the interview room, but he quickly raised his head when the officers spoke to him. (Video 18:59:50; Hrg. Tr. 15:8-12; 15:17-21; 28:20-29:3). Similarly, although during the long break in the interview

11

defendant made a make-shift cot and laid down for a period of about 25 minutes, he arose on his own and was alert and standing when Agent Corpening returned to the room. (Video 20:59:40-21:25:42; 21:29:07; Cloutier Dec. ¶ 29).

Although defendant cites the large quantity of heroin he had taken as evidence of impairment, he concedes that he had built up significant tolerance to the drug and needed large quantities simply to avoid going into withdrawal. (Def.'s Supp. Mem. 1, 2-3; *see also* Hrg. Tr. 154:16-156:17 (Boyle explaining the level of defendant's addiction and the development of tolerance)). Evidence of the amount of drugs taken does not itself establish lack of capacity to make a knowing and intelligent waiver. *Cristobal*, 293 F.3d at 142. Moreover, at least four hours had passed between the time defendant took the heroin and the start of the interview, sufficient time for its initial effects to have worn off significantly. (Hrg. Tr. 9:1-7; 63:1-64:17; 196:7-13).

Additionally, throughout the interview, defendant spoke logically and clearly. His speech, although slow at times, was not slurred or otherwise distorted.

The content of defendant's conversation with the officers demonstrates that he was able to engage in rational thought. He actively discussed with the officers the different ways in which he could assist law enforcement in further identifying heroin dealers. (Interrog. Tr. 13:6-14:6; 15:9-16:1; 17:13-17; 17:24-18:3; 36:19-39:16; 42:15-47:14; 50:4-52:12; 62:4-65:3). In the course of this discussion, defendant rejected several of the officers' suggestions, gave specific reasons why they would fail, and explained why his proposal would provide better results. (*Id.*).

In addition, defendant's responses to the officers' questions were notably detailed. He explained in detail the different places he had lived in the past several years. (*Id.* 20:23-21:8; 29:12-23). When asked about a safe found during the execution of the search warrant, defendant described

12

how the safe was used. (Interrog. Tr. 26:5-27:1). He further explained that, generally, he did not use the safe, and only opened it for his mother because she was unable to operate the lock. (*Id.*). Defendant also provided the officers with detailed descriptions of his heroin suppliers. (Interrog. Tr. 8:4-9:16; 10:3-11:2; 14:7-15:8; 16:4-19:1). He provided their phone numbers, described their physical appearance and the vehicles they drove, and explained his routine interactions with them. (*Id.*).

Defendant also exhibited a significant recall of historical facts. For example, soon after Agent Corpening first entered the interview room, defendant stated that he recognized Agent Corpening from an encounter ten years earlier, and later in the interview related more details about the encounter. (*Id.* 2:16-18; 53:1-19).

### 2. *Evaluation of Expert Evidence*

The government's expert, Lieutenant Tomczak, confirmed that defendant did not show during the interview the signs typically associated with impairment by heroin. (Hrg. Tr. 62:14-19). Lieutenant Tomczak did not witness the interview as it occurred, but instead based his testimony on the video tape of it, Corporal Cloutier's declaration, and other evidence. (*Id.* 52:3-53:13). Tomczak testified that, unlike a person impaired by heroin, defendant responded promptly to statements and questions by the officers; had normal, not slow, body movements and a steady gait; and was alert and attentive. (*Id.* 53:14-59:10). The only possible indication of heroin impairment which Lieutenant Tomczak said defendant exhibited was a low voice, but, even so, concluded that defendant was not impaired. (*Id.* 67:6-18). Although Lieutenant Tomczak also expressed the opinion that heroin did not affect defendant's ability to understand the questions put to him and his answers during the

13

interview, the court gives little weight to this opinion because it appears to exceed the scope of Lieutenant Tomczak's expertise as a drug recognition expert.

In contrast to Lieutenant Tomczak, defendant's expert, Chris Boyle, interpreted certain conduct by defendant shown on the interview video as clearly indicating that he was impaired, such as his purported impulsivity in completing the *Miranda* Form (*id.* 153:1-22), lack of extraneous motor movement (*id.* 152:11-14), flat affect (*id.* 159:9-13), and pattern of slowing speech (*id.* 160:21-23). The court finds, however, that this conduct, to the extent that it was exhibited at all, is not readily distinguishable from conduct that would reasonably be expected of a person not using heroin. Moreover, the opinion on impulsivity with the *Miranda* Form is based on the dubious assumption that a person with an extensive criminal background, such as defendant, will be more deliberative in reviewing it than a person with little experience. (*Id.* 159:14-23; 181:1-24; *see also* Def.'s Supp. Mem. 7). Ultimately, defendant concedes in his supplemental memorandum that, like a functioning alcoholic, he exhibited a semblance of normalcy during the interview. (Def.'s Supp. Mem. 2-3; *see also* Hrg. Tr. 197:19-23 ("We understand that [defendant] can communicate, the testimony from both of the experts was that you're able, to a certain extent, to be able to respond to questions . . . .")). The court accordingly does not find this portion of Boyle's testimony to be persuasive. In any event, Boyle concedes that the impairment he believes defendant exhibited during the interview did not deprive defendant of the ability to understand and respond to basic questions, such as those concerning his background. (Hrg. Tr. 174:21-175:10; 176:4-13; 178:3-11).

Boyle opined, nonetheless, that defendant's heroin addiction deprived him of a full awareness of the nature of the rights he was waiving and the consequences of that decision. (*Id.* 163:14-164:1; *see* Def.'s Supp. Mem. 3, 5-7). The basis for this opinion is that, as a consequence of his drug

14

addiction, defendant was focused primarily on obtaining his next fix in order to avoid the discomforts and debilitation of heroin withdrawal; that the opportunity for cooperation with the police offered him a possible means of obtaining release from custody and thereby returning to his pattern of drug use; and that he therefore concentrated on pursuit of this opportunity to the exclusion of other considerations. (Hrg. Tr. 153:23-154:2; 158:17-21; 164:2-7;180:4-8). Boyle also stated the opinion that at no point in the addiction cycle—from administration to the resulting high (or lesser impact) to withdrawal—would a heroin addict have the judgment sufficient to make such decisions as waiving his *Miranda* rights. (*Id.* 182:9-21).[6]

The court does not believe that Boyle's opinions, even if accepted as accurate, would provide a basis upon which to find that defendant lacked the ability to make a knowing and intelligent waiver. As discussed, the focus of the applicable legal standards is whether a defendant is alert and capable of rational thought. The evidence of record clearly shows that defendant possessed these attributes. That defendant's addiction, and more specifically the fear of withdrawal, could strongly influence him to pursue particular objectives in the decision making process to the exclusion of others would not negate these basic capabilities. Defendant cites no cases holding that the fear of withdrawal rendered a person unable to make a knowing and intelligent *Miranda* waiver.

---

[6] These opinions would suggest that each of the "many times" defendant was arrested he would have sought to cooperate with the police and waived his *Miranda* rights. (Def.'s Supp. Mem. 2). In fact, though, defendant states that the waiver at issue is the only one he has ever given. (*Id.*). Defendant's criminal record has not been filed, although defendant does provide some details during his interview. (Interrog. Tr. 47:15-50:3; 65:20-67:2). Lacking more complete information about defendant's criminal record, as well as the state of defendant's addiction at the time, if any, the court draws no conclusions from defendant's response to the other arrests. The court also notes that to the extent that defendant does have prior experience with the criminal justice system, it would have facilitated his understanding of his *Miranda* rights. *See, e.g., United States v. Cintron*, No. 07-10435, 2009 WL 924423, at *2-3 (D. Mass. 1 April 2009) (finding that defendant's *Miranda* waiver was knowing and intelligent despite his use of heroin before questioning based, in part, on his awareness of his rights and consequences of waiver gained through his lengthy criminal record); *United States v. Simmons*, 526 F. Supp. 2d 557, 565, 574 (E.D.N.C. 2007) (citing *Correll v. Thompson*, 63 F.3d 1279, 1288 (4th Cir.1995)) (finding that defendant's familiarity with criminal justice system helped establish his *Miranda* waiver as knowing and intelligent).

Defendant also cites no authorities supporting the proposition that heroin addicts are per se unable to make a knowing and intelligent waiver. To the contrary, as defendant appears to recognize, such a per se rule would run afoul of the requirement that the validity of a waiver be determined on the basis of the totality of the circumstances of each case. *Moran*, 475 U.S. at 421; (Def.'s Supp. Mem. 4-5). A per se rule is also inconsistent with the numerous cases finding that apparent heroin addicts knowingly and intelligently waived their *Miranda* rights. *See, e.g., United States v. Palmer*, 203 F.3d 55, 61 (1st Cir. 2000) (affirming holding that defendant intelligently and knowingly waived his rights despite his heroin addiction and alleged withdrawal symptoms in light of defendant's lucidity, detailed recall, and prior experience with the criminal justice system); *Sledge*, 546 F.2d at 1122 (affirming holding that defendant who had taken heroin and another drug "was aware of what was occurring when interrogated and voluntarily, intelligently, and knowingly signed the waiver form"); *Edmonds*, 2009 WL 1416034, at *2-4 (holding that defendant "demonstrated a sufficient mental capacity to make a knowing and intelligent waiver" despite his claim that he had taken heroin prior to his interrogation); *United States v. Sutherland*, 891 F. Supp. 658, 662-65 (D. Me. 1995) (holding that defendants' statements to police were made voluntarily and knowingly despite their heroin addiction because they were not yet experiencing symptoms of withdrawal at the time the statements were made).

Moreover, the thrust of Boyle's opinions can be interpreted to be that defendant's will was overborne by the fear of withdrawal. Such a contention, however, relates to whether a waiver is voluntary, not to whether it is knowing and intelligent. *See Moran*, 475 U.S. at 421. Indeed, defendant cites cases on the voluntariness of waivers in discussing Boyle's opinions. (*See* Def.'s Supp. Mem. 5-7). As previously discussed, not only did defendant expressly abandon his challenge

16

to the waiver based on voluntariness, but such a challenge would lack merit because there is no evidence of coercive activity by the police against defendant.[7]

The court concludes that by a preponderance of the evidence the totality of the circumstances show that defendant's waiver of his *Miranda* rights was knowing and intelligent. Defendant's motion to suppress should accordingly be denied.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendant's motion to suppress be DENIED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days or such other period as the court may direct in which to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this the 24th day of August, 2009.

James E. Gates
United States Magistrate Judge

---

[7] In the context of the voluntariness of a confession, one court has expressly rejected the contention that the defendant's fear of heroin withdrawal rendered his statements involuntary. *United ex rel. Hayward v. Johnson*, 508 F.2d 322, 328 (3rd Cir. 1975) (holding that defendant's confession was "the product of an essentially free choice" despite defendant's fear of oncoming heroin withdrawal), *overruled on other grounds*, *Patterson v. Cuyler*, 729 F2d 925, 932 (3rd Cir. 1984).